Eastern District of Kentucky
FILED
JAN 1 1 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-89-GWU

JOYCE E. RANDALL, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review, pursuant to the provisions of the Social Security Act, of an administrative decision of the Commissioner of Social Security; at issue is the denial of her applications for Disabled Widow's Insurance Benefits (WIB), Supplemental Security Income (SSI), and Disability Insurance Benefits (DIB). The case is currently before the Court on cross-motions for summary judgment.

## LAW APPLICABLE TO WIB

The medical evidence relating to such widow's insurance benefits claims filed on or after January 1, 1991, or applications pending on or after that date, are to be evaluated under the same standards as are applied to other Title II disability claims. Omnibus Budget Reconciliation Act (OBRA) of 1990, Pub. L. No. 101-508, Section

1

Randall

5103. Accordingly, a review of the principles applicable to judicial review of these other claims is necessary.[1]

## LAW APPLICABLE TO SSI AND DIB

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Disability Insurance Benefits or Supplemental Security Income benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520)c), 404,1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P,

---

[1] Other requirements for widow's benefits were not at issue in the present case.

2

Randall

> Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).
>
> 6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).
>
> 7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

Randall

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656, (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. If there is objective medical evidence of a medical condition, the court must determine if (1) objective evidence confirms the severity of the alleged pain arising from the condition, or (2) the objectively-established medical condition is of such severity that it can reasonably be expected to produce disabling pain. McCormick v. Secretary of Health and Human Services, 861 F.2d 998, 1002 (6th Cir. 1988).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health

4

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-one work experience is considered to have had no

work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

Randall

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P. Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge declined to reopen an unfavorable decision on a prior application for benefits, and applied res judicata to the issue of disability from April, 2000 (the claimant's alleged onset date) and November 15, 2001 (the date of the prior denial decision). (Tr. 16). For the period from November 16, 2001 onward,

7

Randall

he concluded that the plaintiff, an individual with more than a high school education who was "approaching advanced age," had an unspecified number of "severe" impairments[2] which restricted her to a limited range of light level work (Tr. 19-20, 22) and prevented a return to past work (Tr. 21, 23). Nevertheless, the vocational expert (VE) was able to identify a significant number of jobs which were compatible with the vocational parameters. (Tr. 21-22, 23). Thus, the claims for benefits were denied. (Tr. 24).

The VE had been asked to assume the following factors: (1) an ability to function at no more than light level exertion, (2) an inability to climb ladders, ropes or scaffolds, or to crawl, and (3) an inability to do more than occasional repetitive hand motion using either hand. (Tr. 225-226). The question is whether these factors, identical to the ones used by the previous ALJ (Tr. 49), adequately depicted the plaintiff.

The agency's position is not assisted by two sets of medical sources that depicted the least restrictions for the plaintiff. These two sources were (1) the one-

---

[2]The ALJ noted that the prior agency denial decision had included findings that Randall had "severe" bilateral tendonitis in both wrists and diabetes. (Tr. 18). He noted that she was diagnosed by one physician with obesity, chronic pain of the upper extremities, diabetes and chronic gastrointestinal distress attributed to "dumping syndrome" (Tr. 19) and that she had sought intermittent treatment for diabetes, sinusitis, dermatitis, tendonitis and other musculoskeletal complaints in the most recent period (Tr. 18).

8

Randall

time consultative physical examiner, and (2) two separate non-examining medical reviewers.

Martin Fritzhand, the consultative examiner, indicated that the plaintiff was obese, but had normal heart and lung sounds and her funduscopic examination was normal. (Tr. 156). The doctor stated that she appeared comfortable in the supine and sitting positions, she walked with a normal gait, her joints did not seem to be abnormal, and that her neurological examination was unremarkable. (Tr. 156). The doctor indicated that he was unable to assess muscle and grasp strength over the upper extremities; while effort was questioned, there was said to be a marked ratchety giveway response to manual muscle testing. (Id.). An x-ray of the left hand ordered by the doctor proved to be normal in result (Tr. 158), but the doctor did not refer to the information in his report. Significantly, Fritzhand did not complete an assessment form, nor did he provide detailed commentary about work-related restrictions upon which the ALJ could rely.

The medical reviewers' opinions could not be relied upon by the agency. One medical reviewer, who evaluated only the part of the record which had been submitted as of April, 2002 and thus could not have examined any of the treating physicians' notes (Tr. 3), opined that there were no "severe" physical impairments. (Tr. 159). Another medical reviewer, who reviewed records submitted only as of June, 2002, could not have reviewed all of the progress notes of either of the treating physicians; he did at least see a "November 26, 2001 opinion of Dr. B. J.

9

Randall

Parsons" and merely briefly opined that this was an opinion reserved to the Commissioner and did not refer to any other portion of the treating physicians' opinions (Tr. 160). While the opinion of a non-examining expert may be accepted over that of an examiner, the non-examiner must have had the benefit of the review of the entire record and clearly stated the reason that his opinion differed from that of the examiner. Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). Thus, neither medical reviewer would be sufficient to properly rebut a well grounded opinion from a treating source.

Dr. Scott Stephens treated the plaintiff during 2001 and 2002. In April, 2001 he diagnosed her with having new onset type 2 diabetes and started her on medication. (Tr. 165). The next month, he composed a two sentence note indicating that he was seeing her for "uncontrolled diabetes." (Tr. 164). Laboratory results he had ordered showed a glucose level of 222, with 65 to 110 being normal. (Tr. 167). In October, a one sentence note without accompanying data indicated that his patient had "chronic bilateral tendonitis and is permanently disabled." (Tr. 163). A December, 2001 progress note detailing treatment for chest pain contained minimal objective findings of the office visit. (Tr. 162). A June, 2002 progress note included a reference to subjective complaints of a skin rash, and hand and feet swelling and tingling, but little objective findings in the actual progress note. (Tr. 161). The doctor apparently ordered laboratory testing which revealed a glucose level of 164. (Tr. 181). Thus, while Stephens' information does suggest more

10

severe limitations than the ALJ used, he provided little clinical detail in support of his disability opinion, which was thus not binding.

The same conclusion, however, can not be reached with regard to the information from Dr. B. J. Parson, a <u>specialist</u> and a treating source for the plaintiff. Randall was seen by the orthopedic surgeon from 2000 (before the current period) though June, 2003. Her first office visits were for tendonitis in her wrists and hands and the doctor at that early point felt that she was unable to do her usual occupation or any work requiring repetitive motion (Tr. 173); he later opined that she would have specific restrictions and that her complaints of exacerbation of pain upon even minimal use of her upper extremities were reasonable (Tr. 171) and, ultimately, that she was not able to hold gainful employment (Tr. 172). Several days within the current period, Parson provided another brief note indicating that the plaintiff would not be able to hold gainful employment; he indicated that this was due to the tendonitis in both hands and wrists which had lasted more than a year despite conservative therapy. (Tr. 170). A July, 2002 progress note documented treatment, again for bilateral tendonitis as well as bilateral foot pain; x-rays of <u>both</u> the hands and feet were said to show some small joint changes and the doctor prescribed Darvocet and anti-inflammatories. (Tr. 169). Bilateral foot pain was the subject of an office visit in January, 2003; there was a painful range of motion and x-rays showed some spurring and degeneration of the tarsometatarsal joint of the foot. (Tr. 180). The doctor also noted the patient's history of having club feet as a child, which

11

the doctor indicated could well be causing her continuing problems. (Id.). The patient returned to Parson in June, for complaints of chest congestion; the doctor detected wheezes and diagnosed bronchitis (Tr. 183), but also apparently ordered an EKG which was borderline abnormal in result (Tr. 184).

Reviewing Parson's records, it can not be said that these were as lacking in clinical detail as Dr. Stephens'. Parson took more x-rays of the hands than any other doctor. Further, Parson, a specialist, referred to the issue of bilateral foot pain which was not specifically addressed by any other doctor, and ordered x-rays of both the foot and right hand, also not reviewed and discounted by any other doctor. While Parson's actual disability opinion may not be fully binding, as an opinion reserved to the Commissioner, he had earlier provided progressively increasing opinions of restriction, which would presumably be subsumed in the later disability statement, such as the fact that the plaintiff could reasonably have exacerbation of pain upon even minimal use of the upper extremities. (Tr. 171). His records did suggest that an additional condition (i.e., the foot pain) had developed since the last administrative opinion.

Additionally, the ALJ cited the plaintiff's Activities of Daily Living form as evidence of an activity level incompatible with her alleged pain. The defendant's brief refers to the fact that Randall "remains capable of caring for her personal needs, doing laundry, performing some household chores, driving, watching television, reading, going shopping, walking, attending church, and visiting friends

Randall

and family." Read in their totality, however, the plaintiff's statements do not contain an admission of normal activity. Although she indicated that she cared for her personal needs, she stated that she had trouble with it and had to have assistance from her sister, mother and daughter with caring for her hair and nails. (Tr. 110, 111, 222-223). The plaintiff admitted that she could drive, but only for the short distance of three miles to go to church or for doctors' appointments. (Tr. 110). She indicated that she watched only 10 hours of television a week. (Tr. 143). She stated that she shopped only with her mother or sister, who would do all her lifting. (Tr. 112, 114). While she did some household chores, her family did the heavy chores (Tr. 113) and that she did no cooking, vacuuming, mopping, sweeping or changing the beds (Tr. 113, 143). She indicated that she received friends and relatives for visits on few occasions and only for a short time; if her relatives stayed longer, it was to do chores that lasted longer. (Tr. 114-115). Thus, at least some of the statements about the plaintiff's activity level appear to have been taken out of context.

The decision will be remanded for further consideration.

This the ___//___ day of January, 2006.

*[signature]*
G. WIX UNTHANK
SENIOR JUDGE

13